REPUBLICAN PARTY OF ARK. *v.* STATE, EX REL. HALL

5-3804                                        400 S. W. 2d 600

Opinion delivered March 28, 1966

*G. Thomas Eisele,* for appellant.

*Bruce Bennett,* Attorney General; *Fletcher Jackson,* Asst. Attorney General, for appellee.

JIM JOHNSON, Justice. This is a petition for writ of mandamus to require the Treasurer of Arkansas to make public certain of the internal or working records of the Treasurer's office, in particular, bank deposit records.

On March 4, 1965, appellant Dr. Wayne Babbitt, vice chairman of the Republican Party of Arkansas, appeared at the office of appellee Nancy Hall, Treasurer of the State of Arkansas. Appellant gave appellee a letter written on Republican party stationery requesting the Treasurer to provide the party with ''a detailed listing of where the public funds of Arkansas are on deposit and the current total of said funds in each bank.'' Appellant offered to return the following week for appellee's reply. Appellee forthwith sent appellant's letter to the Attorney General with the following request: ''Will you please advise this office if the records of the bank deposits in the various state and national banks over the state are public records. Also, please advise if this office is permitted to give the complete list to anyone requesting the information.'' The opinion of the attorney general pointed out certain state records, ''amongst other things, . . . [records of] State Penitentiary inmates, state hospital patients, students in our institutions of higher learning, children in our children's colony'' are not by their nature ''public'' records. The opinion went on to say that, ''There is no constitutional or statutory authority for the State Treasurer to furnish information which she deems inappropriate in the public interest,'' and advised appellee that, ''In view of the foregoing, I think you are soundly justified in refusing Mr. Babbitt's request.'' Following the directions of the Attorney General, Mrs. Hall declined to exhibit the requested records.

On June 4, 1965, appellant individually and as vice chairman of the Republican Party of Arkansas filed a

complaint in Pulaski Chancery Court against appellee for a writ of mandamus to require appellee to make the records on bank deposits and withdrawals of state funds (since appellee took office on January 1, 1963) available for inspection and copying at reasonable times. On behalf of appellee the Attorney General filed an answer on June 15, 1965, denying that the records are public per se or that the records should be made public for political purposes, praying dismissal of the complaint for want of equity, that no lawful purpose would be served by such complaint, and because "mandamus will not lie to compel the performance of a purely discretionary duty of appellee."

(At this time the General Assembly, in extraordinary session, passed the state treasury management law [Ark. Stat. Ann. §§ 13-421 - 13-431 (Supp. 1965).] This act, best known for requiring interest on bank deposits of state funds, also requires the Treasurer to prepare a daily and cumulative summary of transactions of each of the state funds, a report copy of which is to be available for public inspection. The act was approved June 7, 1965, and became effective September 6, 1965.)

After trial on June 22, 1965, the court dismissed the complaint on July 6, 1965, from which comes this appeal.

In this suit appellant asks us to declare that he, an Arkansas citizen-taxpayer, has the right to examine and copy the day-to-day working records of the State Treasurer's office which reflect the location and amount of bank deposits and withdrawals of State funds, and to further declare that the Republican Party of Arkansas, of which he is a member, as a class have the right to examine these same records and if it so desires to publish in the party newspaper information gleaned from this examination. We are startled that we need be asked. In a brilliant opinion on the same point (*State* v. *Kelly,* W. Va. 1965, 143 S. E. 2d 136) the West Virginia Supreme Court said recently:

"It is indeed difficult to envision a greater interest in public records which reflect the handling of public funds than that of a citizen and taxpayer whose own contribution to the public funds is directly involved. His is a real interest. It is such that, in the absence of some compelling reason to the contrary, he should be entitled to inspect the records pertaining thereto."

This right, of course, is tempered by reasonable regulation in the interests of safekeeping of the records and avoiding disruption of the work of this public office. These records which are kept in the ordinary course of the business of the State Treasurer are not personal to the Treasurer but are a part of the public transactions of the office.

It is obvious that exposure to public view of certain types of state records would be detrimental to individual citizens, such as adoption records and state hospital case histories; and, just as obviously, exposure to public view of other types of state records would be detrimental to the public pocketbook, such as highway department records of location of proposed highways. These types of records are not under consideration here.

Suffice it to say, our holding in *Gaspard* v. *Whorton,* 239 Ark. 849, 394 S. W. 2d 621 (on ballot applications), is equally apropos here: "The denial to the public of reasonable access to public records by public officials is not conducive to the perpetuation of our form of government."

The Attorney General argues relative to the requested records that, "They were just records of deposits in banks." . . . "There was no right under statute, common law, nor any other law to inspect these records of bank deposits." In answer to the argument that there is no common law right to inspect these records, we adopt as our own a rule earlier promulgated by the Michigan Supreme Court (*Nowack* v. *Fuller,* 243 Mich. 200, 219

N. W. 749, 60 A.L.R. 1351), that if there be any rule of the English common law that denies the public the right of access to public records, it is repugnant to the spirit of our democratic institutions. Regnat Populus—The People Rule—is the motto of Arkansas. It should ever remain inviolate.

The decree of the trial court is accordingly reversed and remanded with direction that the writ of mandamus issue.

McFADDIN, J., dissents.

ED. F. McFADDIN, Justice, dissenting. There are two reasons for my dissent: (1) the Majority Opinion is too broad in its holding; and (2) the entire case is moot.

I.

The Majority has ordered the Trial Court to issue a writ of mandamus. For what? Here is a part of what the appellants alleged, and prayed, in the complaint:

"Plaintiff Dr. Wayne Babbitt is a citizen, resident and taxpayer of North Little Rock, Pulaski County, Arkansas; said plaintiff is also the Vice-Chairman of the Republican Party of the State of Arkansas and is authorized to represent said Party in this proceeding. The defendant Nancy Hall is the Treasurer of the State of Arkansas and she is a citizen and resident of Pulaski County, Arkansas.

"The defendant Nancy Hall, as Treasurer of the State of Arkansas, has in her possession and custody and keeps, maintains and controls, fiscal and financial records of the State of Arkansas. In such capacity the said defendant Nancy Hall has custody and control of records and documents which will reveal the names and addresses of the banks in which funds of the State of Arkansas, special and general and trust, are deposited from time to time. Said records

have been made, maintained, changed and kept current by, or under the direction and supervision of, the defendant Nancy Hall since the date she first took office as Treasurer of the State of Arkansas, on January 1, 1963. Such records show all deposits and all withdrawals of such state funds from the date the said Nancy Hall took office until the present date and are public records and should be available at reasonable times for inspection and copying by any citizen and taxpayer of the State of Arkansas.

"Plaintiffs are entitled, without any special interest, to examine the records and documents referred to in the last paragraph, as a matter of absolute right. In addition, plaintiffs have separate and special interests in obtaining the information referred to in Paragraph 2 above. The Republican Party of the State of Arkansas desires to obtain and publish in the 'Outlook', a statewide newspaper, the list of all banks which, at any time from January 1, 1963, until the present date, have had, and have, state funds, regardless of classification, on deposit. It also wishes to publish, and reveal to all the citizens of the State of Arkansas, the important fluctuations and variations in said accounts over said period of time. In this connection it desires to publish the names and addresses of those who own, or control, said banks and to make whatever comment upon said facts which it deems appropriate. The Republican Party of the State of Arkansas believes that all the citizens of the State of Arkansas are entitled to this information and further believes that it is wrong and unlawful for any public official to deny to the citizens of Arkansas the opportunity to know such facts, regardless of the political consequences. The incumbent administration is controlled by the Democratic Party of the State of Arkansas and all State office holders, including the defendant Nancy Hall, are members of that political party. The Republican Party of Arkansas has no independent access to the information here sought. . . .

"Wherefore, plaintiffs pray . . . that a mandatory order be issued compelling the defendant to make available all fiscal and accounting records which are maintained and controlled directly or indirectly by her and are in her custody as Treasurer of the State of Arkansas and, more specifically, the records providing the information referred to above, for inspection, copying or photocopying by the plaintiffs or any other interested citizens at reasonable times during her regular office hours; for their costs and all other proper relief."

Under the Majority Opinion the Trial Court will issue a writ of mandamus in accordance with the above allegations and prayer; and I dissent from such broad holding. My views are those expressed in the text of American Jurisprudence,[1] and the cases that I now cite:

In 45 Am. Jur. p. 427 *et seq.*, "Records and Recording Laws" § 17 *et seq.*, in discussing the persons entitled to inspect public records, the holdings are summarized in this language:

"Every person is entitled to the inspection, either personally or by his agent, of public records, including legislative, executive, and judicial records, *provided he has an interest therein which is such as would enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information.* This rule, it is said, is not so much a denial of the right of every citizen to inspect the public records and documents as a *declaration of the interest which a private individual must have to avail himself of the extraordinary writ of mandamus to enforce his right.* In theory the right is absolute, yet in practice it is so

[1]Attention is also called to the following: Annotation in 10 L.R.A. 212, "Inspection of Public Records"; annotation in 27 L.R.A. 82, "Right to Inspect Public Records"; and annotation in 169 A.L.R. 653, "Enforceability by Mandamus of Right to Inspect Public Records."

limited by the remedy necessary for its enforcement that it can be denominated only a 'qualified right.' The existence of a suit is not, however, a sine qua non for the exercise of the right.

*"In this country, the person asking inspection must have an interest in the record or paper of which inspection is sought and the inspection must be for a legitimate purpose,* but interest as a citizen and taxpayer is sufficient in some instances. An attorney at law employed by a person having the right to an inspection has an interest which entitles him to an inspection. *No one has a right to examine or obtain .copies of public records, it is asserted, from mere curiosity, or for the purpose of creating public scandal, or from motives merely speculative. . . . .*

"It has been held that there is no general right of inspection of records of executive departments of the government which are not intended as notice, but are kept merely as evidence of the transactions in the departments. *In accordance with a general rule of statutory construction, a statute providing for the inspection of certain specifically enumerated public records is construed as excluding from its effect all records not expressly mentioned. Common-law principles as to the public character of records are to be applied in respect of cases not included in the statute."* (Emphasis my own.)

I agree with what the Supreme Court of Rhode Island said *In Re Caswell's Request,* 18 R. I. 835, 49 A.S.R. 814, 27 L.R.A. 82: ". . . . no one has a right to examine or obtain copies of public records from mere curiosity, or for the purpose of creating public scandal."

In *Brewer* v. *Watson,* 71 Ala. 299, 46 American Reports 318, the Supreme Court of Alabama used this language:

"The individual demanding access to and inspection

of public writings must not only have an interest in the matters to which they relate, a direct, tangible interest, but the inspection must be sought for some specific and legitimate purpose. The gratification of mere curiosity or motives merely speculative will not entitle him to demand an examination of such writings. 1 Whart. Ev., § 745; *King* v. *Merchant Tailors' Co.,* 2 Barn & Ad. 115; *King* v. *Justices Staffordshire,* 6 Ad. & Ell. 84; *Ex parte Briggs,* 1 Ell. & Ell. 881 (102 Com. Law, 879); *People* v. *Walker,* 9 Mich. 328.''

The appellants in this case allege that they want to see all the records that have been kept in the office of the State Treasurer since Mrs. Nancy Hall became State Treasurer in 1963. I think that such is a curiosity search. No good reason is shown why all these records of the past years should be made available; and I find no evidence in this record that shows any good reason for wanting all his information, back to 1963. The witness Babbitt was asked:

''Q. What other purposes did you have in seeking the information?

''A. I was interested in seeing how this money was handled and until we get the facts I made no allegation that they were improperly handled. But until we arrive at the facts how they are handled, who is to say whether they are properly or improperly handled?

''Q. Did you wish to determine whether political favoritism had been used in the placing of these funds?

''A. Here again I will go back to the fact that if it is indicated that the State funds have been manipulated for any individual's benefit, then certainly we shall charge this.''

These answers of the witness, Babbitt, show clearly that he was on a "fishing expedition" for curiosity; and, under the cases I have cited, such mere curiosity does not justify the issuance of a writ of mandamus.

## II.

Furthermore, I think appellants' suit is moot because of Act No. 12 of the First Special Session of 1965 of the Arkansas Legislature.[2] That Act was approved on June 7, 1965. It is entitled: "An Act to Institute a Comprehensive State Treasury Management Law; and for Related Purposes." Section 5 of the Act requires that the several funds shall be separately listed in the records of the State Treasurer; and Section 5 (B) of the Act provides:

"A daily and a monthly report copy of the record of such summary financial transactions shall be prepared by the State Treasurer and filed with the Chief Fiscal Officer of the State, and such report copy, and the record of the summary financial transactions from which it was prepared, shall be open to public inspection during normal business hours."

Then Section 8 (J) of the Act provides:

"On or before the tenth day next following the end of each calendar quarter-year, the State Treasurer shall prepare, and maintain for public inspection at the Treasurer's office, a list of all depository banks and the amounts of State Treasury funds on time deposit and on demand deposit in each such depository on the last day of business of such quarter-year."

Now, these sections, as quoted, are the publicity sections of the Act, and they state exactly what records shall be open to the public; and these sections of the Act give

[2]This Act may be found on Page 2434 of the printed Acts of 1965.

the appellants all the information that the Legislature has seen fit to give. In the quotation from American Jurisprudence, heretofore copied, it is said: ". . . . a statute providing for the inspection of certain specifically enumerated public records is construed as excluding from its effect all records not expressly mentioned." This is an application of the maxim, "*expressio unius est exclusio alterius.*" So I think that Act No. 12 of the Acts of the 1965 Special Session lists the records that the appellants have the right to inspect; and that such Act makes this suit to be moot.

