GANNETT RIVER STATES PUBLISHING CO. *v.*
ARKANSAS INDUSTRIAL DEVELOPMENT
COMMISSION, et al.

90-50                                              799 S.W.2d 543

Supreme Court of Arkansas
Opinion delivered November 19, 1990

*Rose Law Firm, P.A.*, by: *Phillip Carroll*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, for appellee.

Special Justice, FRANK J. HUCKABA. This is an appeal from the circuit court's finding that an Arkansas Industrial Development Commission (Commission) file was exempt from public disclosure under provisions of the Arkansas Freedom of Information Act (FOIA). Specifically, the trial court found that Act 8 of the Third Extraordinary Session of 1989 (Act 8), which amended the Act, applied to the file, rendering it exempt. Since the case involves interpretation and construction of acts of the General Assembly, we have jurisdiction under Supreme Court Rule 29(1)(c). We reverse and remand the decision of the trial court.

Appellant, Gannett River States Publishing Co., is publisher of the *Arkansas Gazette*. On October 23, 1989, the Gazette made a proper request to inspect the Commission's file. The file concerned the Agency's announcement some days earlier that Tokusen, U.S.A. (Tokusen), would locate a new steel plant in Conway, Arkansas.

The Commission, through Dave Harrington, its executive director, refused the Gazette's request because Harrington concluded, relying on exemptions under existing freedom of information law, that disclosure would give advantage to competitors or bidders. No bidders are involved in this case.

It is not disputed that the records sought are subject to disclosure under the FOIA, unless the Act itself or other laws

specifically exempt it from disclosure. The Act, codified at Ark. Code Ann. § 25-19-105 (1987 & Supp. 1989), read as follows when the request for information was made:

(a)    Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.

(b)    It is the specific intent of this section that the following records shall not be deemed to be made open to the public by the provisions of this chapter:

(9)    Files which, if disclosed, would give advantage to competitors or bidders: . . .

Appellant's suit filed on October 27, 1989, four days after the information was requested. The General Assembly, then in special session, passed Act 8, and the Act was signed into law on November 1, 1989. The hearing in this case was held the next day, on November 2. After passage of Act 8, Section (b) (9) of FOIA was expanded to exempt from disclosure:

(9)

(A)    Files which, if disclosed, would give advantage to competitors or bidders; and

(B)    Records maintained by the Arkansas Industrial Development Commission related to any business entity's planning, site location, expansion, operations, or product development/marketing, . . .

While quoting both Sections (A) and (B) above, the trial court specifically found that Act 8 applied and that the Tokusen file falls within the exemptions from disclosure expressed in the Act. The court further found that the Gazette possessed no property right or other vested right which it lost by the application of Act 8.

The question before this court are: (1) Did Act 8 operate to make the Tokusen file exempt because it related to a business entity's planning, site location, expansion, operations, or product development/marketing? and (2) Is the Tokusen file exempted from disclosure because disclosure would give advantage to

competitors, as FOIA provided when this suit was filed?

Since Act 8 took effect before the trial court order was entered, but after the request for information was made, an answer to the first question depends upon whether the Act operates retroactively as well as prospectively. We will first address retroactive application of Act 8, since the trial court's decision was based upon that Act.

■ This court, in *Abrego* v. *United Peoples Fed. Sav. & Loan*, 281 Ark. 308, 664 S.W.2d 858 (1984), quoted favorably from an opinion of the United States Supreme Court:

> The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student. Compare Sands, Sutherland's Statutory Construction § 106 with *Linkletter* v. *Walker,* 381 U.S. 618, 622-625 (1965). This court has often pointed out that
>
>> the first rule of construction is that legislation must be considered as addressed to the future, not to the past. . . . The rule has been expressed in varying degrees of strength but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights. . . . unless such be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature."
>
> *Union Pacific R. Co.* v. *Laramie Stock Yards Co.,* 231 U.S. 190, 199 (1913) (citations omitted). . . .

Later, in *Arkansas Rural Medical Practice Student Loan & Scholarship Bd.* v. *Luter*, 292 Ark. 259, 729 S.W.2d 402 (1987), citing *Abrego, supra*, we approved the following language:

> The operation of a statute must be prospective only, "unless the words are so clear, strong and imperative as to have no other meaning." *United States Fidelity & Guaranty Co.* v. *Struthers Wells Co.*, 209 U.S. 306 (1908). "Any doubt is resolved against retroactivity and in favor of prospectivity only. *McQueeney* v. *Catholic Bishop of Chicago*, 159 N.E. 2d 43, 80 A. L.R. 2d 796 (1959). "A retrospective application will not be given to a statute

which interferes with antecedent rights unless such be *the unequivocal and inflexible import of the terms and the manifest intention of the legislature." United States* v. *Security Industrial Bank*, 459 U.S. 70 (1982) (our emphasis). Statutes will not be construed to have retroactive operation "unless the language is so clear it will admit of no other construction." *Sutherland Statutory Construction*, Vol. 2 § 41.04, p. 348.

■ The Commission argues that Act 8 was curative and intended to "clear up confusion" in existing law. The language of the statute itself does not expressly suggest that it is curative or for clarification. It amends FOIA by making seven additional types of records exempt from disclosure. The amendatory language makes no reference to any other provision in the FOIA. The rules cited above against retroactive operation apply especially with reference to amendatory acts. *Lucas* v. *Hancock*, 266 Ark. 162, 583 S.W.2d 491 (1979).

In a 1987 case we contrasted the language in an Act then under question with the examples of Act 169 of 1913 which said, "Provided, that this Act shall be construed as retrospective as well as prospective in operation," and Act 102 of 1935 which said, "This Act shall be retroactive and shall take effect as of October 1, 1934." See *Arkansas Rural Medical Practice Student Loan & Scholarship Bd.* v. *Luter, supra.*

In *Luter*, we found the only express language about time was in the emergency clause. That language, as similar language does in this case, said the act would be in effect "from and after its passage and approval." While we recognize that this wording also has import in other contexts, we have considered such wording to weigh against retroactivity. *See also Lucas* v. *Hancock, supra.*

As in *Luter*, we do not interpret this Act as implying a retroactive effect so clearly and unequivocally as to eliminate any doubt. Instead, an implication to the contrary seems more reasonable. We hold that Act 8 contains neither express language nor clear implication mandating retroactive effect.

Having decided that Act 8 operates prospectively only, the nature of the rights to the information requested need not be discussed extensively. The Gazette's position in this case can be

stated simply: when it made its request, it was entitled to review all the Tokusen file except those parts whose disclosure would give advantage to competitors.

Under Act 8, if applied retroactively, the Gazette would have no right to review records relating to Tokusen's site location, as well as six other categories of records. These rights existed before Act 8, were substantive, and in a proper case, would be entitled to constitutional protection against a statute with retroactive effect.

■ Act 8 was not merely remedial or procedural in nature, but created new exemptions from public disclosure which did not exist before. Statutes which are remedial or procedural generally supply new, different, or more appropriate remedies which relate to existing rights, and do not create new rights or extinguish old ones. *See Harrison* v. *Matthews*, 235 Ark. 915, 362 S.W.2d 704 (1962), and *Gillioz* v. *Kincannon*, 213 Ark. 1010, 214 S.W.2d 212 (1948).

The remaining question is whether the information appellant requests may be withheld because its disclosure would "give advantage to competitors," under the exemption which existed before Act 8. Then, necessarily incidental to that answer, is a question of implementation: who determines whether the exemption applies in a particular case?

Appellant, in its request, acknowledged the "competitors and bidders" exemption and did not request such information. Except for that portion of the file which related to expenditure of public funds, appellee withheld the entire file under the exemption. The Commission's executive director assumed sole responsibility for deciding whether the file's contents should be disclosed. He testified in considerable detail about information in the file concerning the nature of Tokusen's business, what they were looking for in a plant site, their competitors, and other information of a general nature. The Commission's file was in the courtroom, and appellee made a timely and proper request that the court examine its contents *in camera*, a request the court denied.

■ The trial court should have examined the Tokusen file, as requested, and made its findings as to what information, if

any, should be withheld under the "competitors" exemption; and what information, if any, should be disclosed. The Commission affirmatively urged that the "advantage to competitors" exemption precluded disclosure. Like any other litigant, it had the burden of proving its affirmative allegation. *Baumgartner v. Rogers*, 233 Ark. 387, 345 S.W.2d 476 (1961). The trial court must ultimately decide whether the agency has met its burden of proving that the records are exempt from disclosure. To hold otherwise makes the public's right to know hopelessly subservient to the unassailable impressions of the public agency involved. The person requesting information would be unable, for lack of information, to question the agency's decision, and the court would be unwilling to scrutinize it.

The public's right to know should not be foreclosed by an agency's uncontrovertible impression, notwithstanding the perceived persuasiveness or ultimate vindication of the agency's position. Even before FOIA, the policy, and probably the common law, of this state strongly favored openness in government. We said in a case decided before FOIA that "if there be any rule of the English common law that denies the public the right of access to public records, it is repugnant to the spirit of our democratic institutions." *Republican Party of Arkansas v. State ex rel Hall*, 240 Ark. 545, 400 S.W.2d 660 (1966).

The course of FOIA was charted and launched early, in 1968, when Justice George Rose Smith spoke for a unanimous court:

> In the act now before us the General Assembly clearly declared the State's public policy: 'It is vital in a democratic society that public business be performed in an open and public manner.' We have no hesitation in asserting our conviction that the Freedom of Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved. *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968).

The case is reversed and remanded with instructions that the trial court conduct appropriate evidentiary hearings consistent with this opinion.

TURNER, J., not participating.