Mr. Michael Clingman Chief Executive Officer Workers' Compensation Commission P.O. Box 950 Little Rock, AR 72203-0950
Dear Mr. Clingman:
This is in response to your request for an opinion regarding the Arkansas Freedom of Information Act ("FOIA"), which is codified at A.C.A. §§25-19-101 through -107 (Repl. 1992 and Supp. 1993). You state that the Arkansas Workers' Compensation Commission ("Commission") has received an FOIA request for ". . . copies of all applications, information and correspondence related to applications submitted pursuant to Rule 33."[1] You have expressed the Commission's concern that the items requested relating to the application process fall within the exemption under the FOIA for "[f]iles which, if disclosed, would give advantage to competitors or bidders[.]" A.C.A. § 25-19-105(b)(9)(A) (Supp. 1993).
While it is my opinion that some of the material contained in these applications may qualify for the so-called "competitive advantage" exemption, I cannot conclude that the entire application and accompanying material is exempt. Such a determination would be contrary to the FOIA's general policy of disclosure. See generally Commercial Printing Co. v.Rush, 261 Ark. 468, 549 S.W.2d 790 (1977). It would also be inconsistent with the requirement that the person or entity seeking nondisclosure must bear the burden of proving eligibility for the exemption. See GannetRiver States Publishing Co. v. Ark. Indus. Dev. Comm'n, 303 Ark. 684,799 S.W.2d 543 (1990). This office has opined that the one invoking the exemption must prove that disclosure would cause substantial harm to its competitive position. See, e.g., Op. Att'y Gen. 94-015. Conclusory or generalized allegations will not suffice. Op. Att'y Gen. 87-473. Rather, specific factual or evidentiary material must be presented showing actual competition and the likelihood of substantial competitive injury from disclosure. Id. This necessarily involves a case-by-case factual determination. Op. Att'y Gen. 91-390. Although the responsibility of review falls on the custodian, the custodian must in turn rely upon information supplied by the person or entity claiming the exemption. Op. Att'y Gen. 87-194.
With regard to the application requirement under Rule 33, I do not know what material, specifically, is claimed to be exempt. Provision is made in Part II.B.1. of Rule 33 for the applicant's designation of "[p]ortions of the application which the MCO [Managed Care Organization] believes are subject to trade secret protection. . . ." Rule 33 at 4. As to those portions which do in fact constitute "trade secrets" under the Arkansas Trade Secrets Act (A.C.A. § 4-7-601(4)), it has been suggested by one FOIA authority that such material will likely qualify for the competitive advantage exemption. J. Watkins, The Arkansas Freedom of Information Act
113 (2d ed. 1994). Of course, the fact that portions have been marked for trade secret protection will not mean that they are exempt. The custodian must make an independent determination of their status. Op. Att'y Gen. 87-473. Reference to the Trade Secrets Act and cases decided thereunder will, however, offer guidance in evaluating specific material. See,e.g., Allen v. Johar, Ind., 308 Ark. 45, 823 S.W.2d 824 (1992) (regarding the protection of customer lists as trade secrets).
With regard to the FOIA's competitive advantage exemption, and its application to the material specifically noted in your opinion request, I cannot conclude without the benefit of more information that the names, addresses, and telephone numbers of all directors and officers of the managed care organization will fall within the exemption. It seems unlikely that substantial competitive harm could result from release of this information. With regard to the names, addresses, and specialties of those providing health care services under the managed care organization, while a showing of substantial competitive harm from release of this information is perhaps conceivable, I lack sufficient information to make that determination. Again, specific information in this regard must, in my opinion, be elicited from the one seeking the exemption. In the absence of a specific showing, it is my opinion that this information is generally subject to disclosure.
On the other hand, copies of contract agreements or other documents detailing specific terms concerning the delivery of services and/or supplies may well qualify for the exemption because this material could potentially arm a competitor with valuable information concerning the managed care organization. Again, however, the one seeking the exemption should submit supporting information regarding the existence of substantial competitive injury.
I am unable, in the absence of specific input from the one submitting the application, to fully evaluate the remainder of the application material. This review, in any event, is factual in nature and must be undertaken by the custodian of the records with the assistance of the one claiming competitive harm. As indicated above, generalized allegations will not suffice. Rather, a specific showing of the likelihood of substantial competitive injury will, in my opinion, be required under A.C.A. §25-19-105(b)(9)(A).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] Rule 33 pertains to the implementation of a managed care system for the delivery and management of treatment to injured employees. See
A.C.A. § 11-9-508 (Cum. Supp. 1993).