Ms. Deborah Frazier, Director Arkansas Health Services Permit Agency Freeway Medical Tower 5800 W. 10th, Suite 805 Little Rock, AR 72204
Dear Ms. Frazier:
You have presented the following questions for my opinion:
 (1) Does Act 1319 of 1999, now codified as A.C.A. § 9-28-407(a)(3), exempt all Psychiatric Residential Treatment Facilities licensed or permitted by the Child Welfare Agency Review Board as of 1999 from the Health Services Permit Agency and Commission permit of approval process?
 (2) More specifically, may a Psychiatric Residential Treatment Facility licensed or permitted by the Child Welfare Agency Review Board as of 1999 expand its facility and seek to license additional beds without first obtaining a permit of approval for the additional beds?
 (3) Does the phrase "licensed or permitted by the Child Welfare Review Board as of 1999" mean those facilities licensed or permitted as of the effective date of Act 1319, as of December 31, 1999, as of January 1, 1999, or some other date?
RESPONSE
Because the issues raised by your three questions are so closely intertwined, I will answer your questions together rather than separately.
It is my opinion, as explained more fully below, that the exemption that is stated in A.C.A. § 9-28-407(a)(3) has the effect of allowing psychiatric residential treatment facilities that were licensed by the Child Welfare Agency Review Board as of the effective date of Act 1319 of 1999 (which was July 30, 1999), to continue to operate in the status for which they were licensed at that time, without the necessity of obtaining further permits or licenses for that status from the Health Services Permit Agency and Commission. However, if these facilities intend to change their status (for example, if they intend to expand), they must obtain the required permits.
I will begin by setting forth the language of the exemption in question. As previously indicated, the exemption language was added to A.C.A. §9-28-407(a) by Act 1319 of 1999. That statute now states:
 (a)(1) It shall be unlawful for any person, partnership, group, corporation, association, or other entity or identifiable group of entities having a coordinated ownership of controlling interest, to operate or assist in the operation of a child welfare agency which has not been licensed by the Child Welfare Agency Review Board from licensing pursuant to this subchapter.
 (2) This license shall be required in addition to any other license required by law for all entities that fit the definition of a child welfare agency and not specifically exempted, except that no nonpsychiatric residential treatment facility or agency licensed or exempted pursuant to this subchapter shall be deemed to fall within the meaning of § 20-10-101(7) for any purpose.
 (3) Any child welfare agency licensed or permitted by the board as of 1999 is exempted from the requirements of law:
 (A) To obtain a license or permit from the Office of Long-Term Care; and
 (B) To obtain a permit from the Health Services Permit Agency and Health Services Permit Commission.
A.C.A. § 9-28-407(a) (Emphasis added).
The emphasized language above is the exemption that is the subject of your questions. In interpreting this language, I must follow the Arkansas Supreme Court's stated rules of statutory construction. The court has said many times that the primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. Bond v.Lavaca School District, 347 Ark. 300, 59 S.W.3d 432 (2001). If the statutory language in question is unambiguous, it is inappropriate to consider matters outside the language itself in interpreting the meaning of that language. However, if the language is ambiguous — if it is susceptible of more than one interpretation, see Russellville CanningCo. v. American Can Co., 87 F. Supp. 484 (1950), rev'd on other grounds,191 F.2d 38. — it is appropriate in ascertaining the intent of the legislature, to consider not only the language of the statute, but also other factors such as the subject matter, the object to be accomplished, the purpose to be served, the underlying policies, the remedies provided, and the consequences of various interpretations. Kifer v.Liberty Mut. Ins. Co., 777 F.2d 1325 (8th Cir. 1985). In my opinion, the reference in the above-quoted exemption to "[a]ny child welfare agency licensed or permitted by the board as of 1999" is ambiguous. It can be interpreted in a variety of ways. I will therefore consider factors outside the language itself in interpreting this reference.
In this regard, I find it pertinent to note that this exemption language was added in 1999 shortly after I had opined that psychiatric residential treatment facilities were not only required to obtain licenses from the Child Welfare Agency Review Board, but were also required to obtain certain permits and licenses from the Health Services Permit Agency and Commission. See Ops. Att'y Gen. Nos. 99-058 and 99-066. It should be noted that in one of those opinions, Opinion No. 99-066, I addressed a question concerning the legality of facilities operating without obtaining the further permits or licenses from the Health Services Permit Agency and Commission. I concluded that such facilities were operating in violation of the law. In light of this context for the addition of the exemption language, it is my opinion that the exemption was intended to absolve from illegality any facilities that were then operating without the additional required permits or licenses from the Health Services Permit Agency and Commission. It appears that the exemption was created for the purpose of assuring that such facilities operating at that time
would not be deemed to be operating illegally.
For this reason, I conclude that the exemption language applies to facilities that were licensed or permitted by the Child Welfare Agency Review Board as of the effective date of Act 1319 of 1999, and only to such facilities. The effective date of that act was July 30, 1999. See
Op. Att'y Gen. No. 99-120. Thus, it is my opinion that the exemption language that was added by Act 1319 of 1999 applies only to facilities that were licensed or permitted by the Child Welfare Agency Review Board as of July 30, 1999.
You specifically asked whether the exemption might be interpreted to apply to facilities that were licensed or permitted by the board as of January 1, 1999, or as of December 31, 1999. Because I have concluded that the exemption applies only to facilities that were licensed or permitted by the board as of July 30, 1999, I must reject those other two interpretations. (That is, I do not interpret the exemption to apply to facilities that may have been licensed prior to the effective date of the act, but that, for whatever reason, were not licensed on the effective date of the act. Likewise, I do not interpret the exemption to apply to facilities that became licensed during 1999 after the effective date of the act. These interpretations, in my opinion, would be contrary to what appears to have been the intent of the legislature, as explained above.[1]
My conclusion regarding this matter is bolstered by the fact that A.C.A. § 9-28-407, quoted above, which states the primary licensing requirement for facilities that are subject to the jurisdiction of the Child Welfare Agency Review Board, must be read in conjunction with any other statutes that impose licensing and permit requirements upon such facilities. The fact that A.C.A. § 9-28-407 makes specific reference to such statutes necessitates that the interaction of such statutes with A.C.A. § 9-28-407
be considered. In addition, one of the primary principles of statutory interpretation is that if two statutes address the same subject, they must be read together in such a way that both can be upheld if possible.Boothe v. Boothe, 341 Ark. 381, 17 S.W.3d 464 (2000).
One such statute that is particularly pertinent to your questions is A.C.A. § 20-8-107. That statute states in pertinent part:
 (a) Unless otherwise provided herein, all health facilities, as defined by this subchapter, seeking to add new beds or home health services or expand existing bed capacity or home health services shall apply for a permit approving additional beds or services or expanded bed capacity or services
 (b) pursuant to procedures and criteria as promulgated by the Health Services Commission.
A.C.A. § 20-8-107(a).[2]
In interpreting the interaction of this statute with the exemption language of Act 1319 of 1999, I find it pertinent that facilities that have and will become licensed after the effective date of the Act (and that therefore do not receive the benefit of the exemption) will clearly be required to obtain a permit to expand in the future, pursuant to A.C.A. § 20-8-107. Act 1319 indicates no intent to grant the facilities affected by the exemption a greater substantive right than is to be afforded to other, similarly situated facilities. Moreover, no apparent purpose would be served by creating a classification of this nature. The requirement of a permit to expand, as stated in A.C.A. § 20-8-107, is an ongoing requirement of Arkansas law that will clearly continue to be imposed upon some facilities. When Act 1319 was enacted, the legislature gave no indication that the ongoing requirement of A.C.A. § 20-8-107 (or any other of the other referenced permit and license requirements) were to be affected in a permanent manner. An interpretation of the exemption language of Act 1319 under which certain facilities are allowed a permanent exemption from A.C.A. § 20-8-107 solely by virtue of the date on which they were licensed by the Child Welfare Agency Review Board, would be, in my opinion, an unreasonable an unwarranted interpretation. In addition, it would call into question the scope and effectiveness of A.C.A. § 20-8-107. I note that the provisions of A.C.A. § 20-8-107 were not amended to reflect any such permanent exemption. The Arkansas Supreme Court has consistently held that statutes should not be interpreted in a manner that would lead to an absurd result or that would render the statute meaningless. See, e.g., ATT v. Public Serv., 344 Ark. 188,40 S.W.3d 273 (2001); Burford Distributing, Inc. v. Starr, 341 Ark. 914,20 S.W.3d 363 (2000); Yarbrough v. Witty, 336 Ark. 479, 987 S.W.2d 257
(1999); Lawhon Farm Servs. v. Brown, 335 Ark. 272, 984 S.W.2d 1 (1998);Citizens to Establish a Reform Party v. Priest, 325 Ark. 257,926 S.W.2d 432 (1996); Henson v. Fleet Mtg. Co., 319 Ark. 491,892 S.W.2d 250 (1995). Such would be the result of an interpretation of the exemption language of Act 1319 of 1999 under which facilities subject to the exemption are granted a permanent exemption from other permit and licensing requirements.
The result of my interpretation is that the exemption language that was added by Act 1319 of 1999 is limited to permitting the continued legal operation of affected facilities (those licensed or permitted by the Child Welfare Agency Review Board as of July 30, 1999) in the status for whichthey were licensed or permitted at that time. That is, the new exemption does not, in my opinion, operate to exempt such facilities from obtaining permits to expand their facilities, as required by A.C.A. § 20-8-107.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] Moreover, with regard to the retroactive application of the exemption language, legislation is presumed not to operate retroactively unless it states an intent to do so. Gannett River States Pub. Co. v.Arkansas Indust. Development Com'n, 303 Ark. 684, 799 S.W.2d 543 (1990). Although this presumption can be overridden with regard to procedural legislation, it will not be overridden with regard to substantive legislation. Id. Act 1319 of 1999 stated no intent to operate retroactively. Moreover, that act was substantive in nature, because it created new rights. Id.
[2] In Opinions Nos. 99-058 and 99-066, I concluded that psychiatric residential treatment facilities are subject to the permit requirement that is set forth in A.C.A. § 20-8-107, above. I continue to hold that view.