PULASKI COUNTY *v.*
ARKANSAS DEMOCRAT-GAZETTE, INC.;
Jane Doe, Intervenor

07-669                                        260 S.W.3d 718

Supreme Court of Arkansas
Opinion delivered July 20, 2007

*Karla M. Burnett, Amanda M. Mitchell*, and *Chastity D. Scifres*, Pulaski County Attorney's Office, for appellant.

*Williams & Anderson, PLC*, by: *Jess Askew III, Clayborne S. Stone*, and *Alison Dennington*, for appellee.

*J. Blake Hendrix, Jr.*, for intervenor Jane Doe.

PER CURIAM. This appeal arises from an order of the Pulaski County Circuit Court, providing certain e-mails be disclosed pursuant to the Freedom of Information Act (FOIA) set forth in Ark. Code Ann. § 25-19-105 (Repl. 2002). On appeal, Appellant Pulaski County argues that the circuit court erred in holding that the e-mails were "public records" as defined by the FOIA. We remand this case to the circuit court with the instruction to perform an in camera review of the e-mails.

On June 4, 2007, Ronald Quillin, former Pulaski County Comptroller and Director of Administrative Services, was arrested for allegedly embezzling approximately $42,000.00 from Pulaski County. Quillin had terminated employment with Pulaski County on April 30, 2007, and was employed by the Arkansas Department of Health and Human Services at the time of his arrest. On June 5, 2007, Appellee Arkansas Democrat-Gazette, through its reporter, Van Jensen, made a written FOIA request to Pulaski County Attorney Karla Burnett asking her to disclose "all e-mail and other recorded communication between former Pulaski County Comptroller and Director of Administrative Services Ron Quillin and employees of Government e-Management Solutions, a software contractor for Pulaski County, from Jan. 2005 to the termination of Mr. Quillin's employment with the county."

Quillin deleted all of the e-mail files contained on his computer prior to his termination. The e-mail messages were not saved in a central location or backed up on any computer medium. Before the FOIA request was made, Pulaski County had the deleted e-mail files restored. On June 12, 2007, Pulaski County released some but not all of the e-mail correspondence requested by the Appellee under the FOIA, contending that the e-mails not released do not constitute "public records" within the meaning of Ark. Code Ann. § 25-19-103.

On June 14, 2007, Appellee filed a complaint against Pulaski County and Pulaski County Attorney Karla Burnett pursuant to the FOIA. That same day, a motion to dismiss was filed on behalf of Pulaski County Attorney Karla Burnett. On June 19, 2007, a hearing was held before the Pulaski County Circuit Court. At the hearing, all parties agreed that Pulaski County Attorney Karla Burnett should be dismissed as a defendant in the matter and that Jane Doe, an employee of Government e-Management Solutions, should be allowed to intervene in the matter. The court heard testimony from Jensen, David Bailey, the managing editor of the Arkansas Democrat-Gazette, and Dan Davis, a hardware analyst

with Pulaski County Information Systems who maintains the network file servers for the county computer system.

On June 25, 2007, the circuit court entered its final judgment in favor of Appellee. The circuit court concluded that the withheld e-mails were public records and ordered them released to Appellee within twenty-four hours of the entry of its judgment. Pulaski County filed a notice of appeal, a designation of the record, and a motion for stay pending appeal. The circuit court denied the motion for stay on June 26, 2007. Pulaski County then filed motions to expedite and for stay pending appeal with this court. We granted the motion to expedite, and ordered the stay pending appeal. We also ordered the parties to file simultaneous briefs addressing the following issues on appeal:

1. Do Pulaski County and the intervenor, Jane Doe, have standing to raise an FOIA issue?

2. Are personal e-mails in a county computer exempt from FOIA? If so, under what circumstances?

3. Did the intervenor waive all privacy rights by sending e-mails to a county computer?

4. Is it necessary for this court to do an *in camera* review of the e-mails to distinguish personal from business e-mails?

First, because Appellee admits in its reply brief that Pulaski County has standing, we need not address this issue. It is necessary to conduct an in camera review to determine whether the e-mails at issue are public records, and thus should be disclosed pursuant to the FOIA. We cannot decide the issues of whether the Intervenor has standing or whether the Intervenor has waived any privacy rights until we know the outcome of the in camera review. Therefore, we will not address these issues.

We now turn to the issue of whether personal e-mails in a county computer are exempt from the FOIA. Though we have asked the parties to brief the issue of whether personal e-mails in a county computer are exempt from FOIA, we conclude that the issue in this case is not exemption. Rather, the issue here is whether the e-mails are "public records" pursuant to the FOIA. Pulaski County asks us to reverse and dismiss this case, arguing that the trial court erred in finding that the e-mails were "public

records" as defined by the FOIA. Alternatively, it argues that this case should be remanded with the instruction to conduct an in camera review to determine if these documents do, in fact, "constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee," thereby making them "public records" pursuant to the FOIA. Appellee responds, arguing that the circuit court correctly determined that the e-mails at issue are public records. Appellee asks us to affirm the circuit court's decision and lift the stay of the circuit court's judgment and injunction.

In this case, we are asked to interpret the FOIA statutory provision regarding the disclosure of records. We review issues of statutory construction de novo. *Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (2006). On review of an issue of statutory interpretation, we are not bound by the decision of the trial court; however, in an absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Fox v. Perroni*, 358 Ark. 251, 188 S.W.3d 881 (2004) (citing *Bryant v. Weiss*, 335 Ark. 534, 983 S.W.2d 902 (1998)). We liberally interpret the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *Id.* Furthermore, this court broadly construes the Act in favor of disclosure. *Id.*

The FOIA, codified at Arkansas Code Annotated § 25-19-101 et seq., opens "all public records" for public inspection and copying. Ark. Code Ann. § 25-19-105(a). The FOIA defines public records as follows:

> (5)(A) "Public records" means writing, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.

Ark. Code Ann. §§ 25-19-103(5)(A).

While recognizing our commitment to the general proposition that the FOIA should be broadly construed in favor of disclosure and exceptions construed narrowly in order to counter-

balance the self-protective interests of the governmental bureau-racracy, we are also aware of the need for a balancing of interests to give effect to what we perceive to be the intent of the General Assembly. In doing so, a common sense approach must be taken. *Bryant v. Mars*, 309 Ark. 480, 830 S.W.2d 869 (1992). The legislative intent behind the FOIA is stated at Ark. Code Ann. § 25-19-102:

> It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this chapter is adopted, making it possible for them, or their representatives to learn and to report fully the activities of their public officials.

In *The Arkansas Freedom of Information Act*, the authors state:

> While the FOIA expressly covers records "required by law to be kept," the legislature apparently did not intend that every record maintained by an agency be subject to public inspection, because the "performance" language in Section 25-19-103(5)(A) limits the term "otherwise kept." While some state FOI statutes seem to include every record held by an agency regardless of its origin or content, the Arkansas act is similar to statutes that cover only those records made or received "in connection with" or "relating to" the agency's duties.

> . . . .

> The presence of the term "performance" in Section 25-19-103(5)(A) may invite a narrower interpretation of "public records." For example, while personal notes made by public officials presum-ably would be public record under a definition that did not include the "performance" language, the Attorney General has indicated that such notes fall outside Arkansas FOIA. This result is sound, particularly in light of the use of the term "scope of employment" in Section 25-19-103(5)(A). There may be instances, however, in which the personal activities of a public official or employee are inextricably linked to his or her governmental role.

John J. Watkins & Richard J. Peltz, *The Arkansas Freedom of Information Act*, 91, 93 (4th ed. 2004); *see also* Op. Ark. Att'y Gen. No. 095 (2005)

(stating that the presumption of public record status established by the FOIA can be rebutted if the records do not otherwise fall within the definition found in the first sentence, i.e., if they do not "constitute a record of the performance or lack of performance of official functions"). Watkins and Peltz specifically address the situation of government employees using their e-mail for both personal and work-related purposes as follows:

> On the face of the Arkansas FOIA, this problem should not be difficult to resolve. Public records are limited by definition to "record[s] of the performance or lack of performance of official functions."
>
> . . . .
>
> An argument can be made that if an employee is using state computer resources for personal correspondence, that use reflects the "lack of performance of official functions," either because state computing resources are being misappropriated or because the employee is handling personal matters while on the state clock. With regard to e-mail at least, that argument is a stretch. Given the prevalence of both public and private employees using their office computers for personal correspondence, employees likely will be able to assert a reasonable expectation of privacy in personal e-mail even if it is generated on a public computer. And even absent such a legally defensible interest, a FOIA request for such extracurricular e-mail might be satisfied by providing only e-mail statistics — such as the size and number of personal messages, or even the "to" and "from" fields of messages — which would reflect non-performance of official duties even with the personal content redacted.

See Watkins & Peltz, *supra*, at 437-39.

Pulaski County argues that when determining whether a document is a public record, we must look at the content of the document, rather than where it is located. Appellee agrees that we must look at the content, but also argues that we must look at the context, including "the circumstances surrounding the transmission of the e-mails, the location of the e-mails, and subsequent facts that have come to light regarding Mr. Quillin in his position as a public official."

Other states have used a content-driven analysis in determining whether a document is a public record. The Florida Supreme Court has held that personal e-mails do not fall within the

definition of "public records" subject to disclosure by virtue of their placement on a government-owned computer system. *State v. Clearwater*, 863 So. 2d 149 (Fla. 2003). In *Clearwater*, city employees reviewed their e-mails and sorted them into two categories, personal and public. A reporter from Times Publishing Company requested all e-mails sent from or received by two city employees over the City's computer network. Even though the City copied the public e-mails and provided them, Times Publishing asserted that it was entitled to all the e-mails generated by and stored on the City's computers. The Florida Supreme Court held that the determining factor of whether a document is a public record subject to disclosure is the nature of the record, not its physical location. The court concluded that " 'personal' e-mails are not 'made or received pursuant to law or ordinance or in connection with the transaction of official business' " and, therefore, do not fall within the definition of public records in Florida Statutes Annotated section 119.011(1) by virtue of their placement on a government-owned computer system. Similarly, the Colorado Supreme Court has held that "[a]n analysis of the messages based solely on the context in which they were created, without an explanation of the content of the messages, is insufficient to determine whether the messages are public records. *Denver Publ'g Co. v. Bd. of County Comm'rs*, 121 P.3d 190 (Colo. 2005).

The Arizona Supreme Court has also used a content-driven analysis regarding e-mail messages:

> The broad definition of public records, however, is not unlimited. The public records law requires all public officials to make and maintain records "reasonably necessary to provide knowledge of all activities they undertake *in the furtherance of their duties.*" *Carlson*, 141 Ariz. at 490, 687 P.2d at 1245 (emphasis added). That definition does not encompass documents of a purely private or personal nature. Instead, only those documents having a "substantial nexus" with a government agency's activities qualify as public records. *Salt River*, 168 Ariz. at 541, 815 P.2d at 910. "[T]he nature and purpose of the document" determine its status as a public record. *Id.* at 538, 815 P.2d at 907 (quoting *Linder v. Eckard*, 261 Iowa 216, 152 N.W.2d 833, 835 (Iowa 1967)). Determining a document's status, therefore, requires a content-driven inquiry. Because the nature and purpose of the document determine its status, mere possession of a document by a public officer or agency does not by itself make that document a public record, *id.*, nor does expenditure of public funds in creating the document, *id.* at 540-41, 815 P.2d at 909-10. To

hold otherwise would create an absurd result: Every note made on government-owned paper, located in a government office, written with a government-owned pen, or composed on a government-owned computer would presumably be a public record. Under that analysis, a grocery list written by a government employee while at work, a communication to schedule a family dinner, or a child's report card stored in a desk drawer in a government employee's office would be subject to disclosure. The public records law was never intended to encompass such documents; the purpose of the law is to open *government* activity to public scrutiny, not to disclose information about private citizens. *See id.*; *accord State v. City of Clearwater*, 863 So. 2d 149, 154 (Fla. 2003) (noting the absurdity of classifying household bills or notes about personal conversations as public records simply because they are located in a government office); *cf. Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice*, 742 F.2d 1484, 1486 (D.C. Cir.1984) (holding that personal appointment materials, such as calendars and daily agendas, are not agency records under the Freedom of Information Act, 5 U.S.C. § 552 (2006)).

*Griffis v. Pinal County*, 156 P.3d at 421-22 (Ariz. 2007) (en banc).

Pulaski County argues that an in camera review is necessary in this case to determine the content of the e-mails. Specifically, Pulaski County asserts that the circuit court's finding could not have been made without reviewing the e-mails in question. Further, it contends that because the circuit court did not conduct an in camera review, the e-mails were not included in the record, and therefore there is no evidence in the record to support the circuit court's findings.

Appellee responds, arguing that because there is no claim that the e-mails fall under a FOIA exemption, an in camera review is not necessary. It asserts that because of the FOIA presumption that the e-mails are public records, the circuit court was correct in not conducting an in camera review. In its reply brief, Appellee contends that such a review would further delay public access to the e-mails.

We have held that the circuit court must review the relevant information in question to determine whether an FOIA exemption to disclosure applies. *See, e.g., Johninson v. Stodola*, 316 Ark. 423, 872 S.W.2d 374 (1994); *Gannett River States Publ'g Co. v. Arkansas Indus. Dev. Comm'n*, 303 Ark. 684, 799 S.W.2d 543 (1990). In *Johninson*, we remanded the case so that the circuit court

could perform an in camera review and then decide whether the information should be released. While the present case does not involve a claim that the e-mails fall under an FOIA exemption, we hold that an in camera review is necessary.

Comparing the nature and purpose of a document with an official's or agency's activities to determine whether the required nexus exists necessarily requires a fact-specific inquiry. *See Griffis, supra* (citing *Church of Scientology v. City of Phoenix Police Dep't,* 594 P.2d 1034, 1035 (Ariz. Ct. App. 1979)). To make that inquiry, while maintaining the privacy of personal, non-public documents, a court should perform an in camera review. *Id.* A neutral court should be the final arbiter of what qualifies as a public record. *See Griffis, supra* (remanding the case to permit the superior court to review the content of the disputed e-mails in camera to determine whether they were subject to the public records law). In *Denver Publ'g, supra,* involving sexually explicit and romantic e-mails that were exchanged between the county recorder and the recorder's assistant, the Colorado Supreme Court remanded the case after concluding that

> the court of appeals failed to take into account the specific nature of the e-mails and their individual content to determine if they address the performance of public functions. An analysis of the messages based solely on the context in which they were created, without an examination of the content of the messages, is insufficient to determine whether the messages are 'public records.'

121 P.3d at 202. Watkins and Peltz also address the issue of in camera review, stating "[i]f a determined records requester were able to articulate doubt as to the reliability of a record segregation process, the requester could obtain an in camera review by a court, which would not infringe on the employee's right to privacy, but which would require bringing suit." *See* Watkins & Peltz, *supra,* at 437–38.

In the present case, the circuit court, in its final judgment, stated:

> Based on the evidence presented at the hearing and all matters appearing of record, the Court makes the following findings of fact:
>
> . . . .
>
> Finding 8. It is impossible to discern whether some emails at issue were purely business emails while other emails were purely personal in nature. Moreover, it is impossible to discern where the business

correspondence stopped and the personal correspondence started with respect to the emails. Personal meetings may have been disguised as business meetings. The Court, however, makes no finding of fact or conclusion of law concerning the legitimacy of any particular business matter raised in the emails at issue. Any such question is beyond the scope of this case.

Finding 9. The personal relationship with Jane Doe may have affected Mr. Quillin's performance as a public employee of Pulaski County. The personal relationship may have influenced Mr. Quillin in expenditures of funds of Pulaski County. For these reasons, all aspects of the personal relationship between Mr. Quillin and Jane Doe are intertwined and enmeshed in the business relationship between Pulaski County and Government e-Management Solutions, Inc.

. . . .

Based on the foregoing findings of fact, the Court makes the following conclusions of law:

. . . .

Conclusion 4. Because the emails at issue are maintained in a public office and are maintained by public employees within the scope of their employment, they are presumed to be public records according to the Freedom of Information Act.

Conclusion 5. However, the Court makes clear that it does not find or hold that any and all emails on Pulaski County computers are, in fact, public records. To the contrary, even with the statutory presumption, it is still necessary to examine the facts concerning emails on a case-by-case basis.

Conclusion 6. Based on the facts before this Court, the emails at issue are public records because they involve a business relationship of the County and are a record of the performance or lack of performance of official functions by Ron Quillin during the times when he was an employee of Pulaski County.

Both Pulaski County and the Intervenor asked the circuit court to review the subject e-mails in camera. The circuit court decided not to review the e-mails, and therefore the e-mails are

not included in the record. Without reviewing the e-mails, there is not enough evidence to support the factual findings that "[i]t is impossible to discern whether some emails at issue were purely business emails while other emails were purely personal in nature," and that "all aspects of the personal relationship between Mr. Quillin and Jane Doe are intertwined and enmeshed in the business relationship between Pulaski County and Government e-Management Solutions, Inc." Nor does the limited amount of evidence in the record support the conclusion that "the e-mails at issue are public records because they involve a business relationship of the County and are a record of the performance or lack of performance of official functions by Ron Quillin during the times when he was an employee of Pulaski County."

We agree with the circuit court's conclusion that not all e-mails on Pulaski County computers are public records, and that even with the statutory presumption, it is still necessary to examine the facts concerning e-mails on a case-by-case basis. However, we hold that in this particular case, it is necessary to conduct an in camera review of the e-mails to discern whether these e-mails relate solely to personal matters or whether they reflect a substantial nexus with Pulaski County's activities, thereby classifying them as public records. *See Griffis, supra.* Both parties agree that the definition of "public records" is content-driven. The only way to determine the content of the e-mails is to examine them. In this case, no court has reviewed the e-mails at issue. Absent such a review, we have no record on which we can determine the nature and content of the requested documents.

Rather than relying on Pulaski County or Appellee to make the determination of whether the documents are public, it is necessary to have a neutral court make this decision. *See Griffis, supra.* Accordingly, we remand this case to the circuit court with instruction to conduct an in camera review to determine if these e-mails "constitute a record of the performance of official functions that are or should be carried out by a public official or employee" thereby making them "public records" pursuant to the FOIA. We ask the circuit court to address this matter forthwith.

Remanded.

GLAZE, IMBER, and DANIELSON, JJ., dissent.

Tom Glaze, Justice, dissenting. I dissent from the majority's decision to remand this case. If the trial court's decision is reversed or remanded, it will seriously weaken the FOIA and its legislative intent.

When addressing this public-records issue, the majority spends a considerable amount of time citing and discussing cases from other states involving those states' "open records" laws; however, those cases are easily distinguishable from Arkansas's FOIA statutes and case law.[1] Of more importance, our General Assembly and this court have dealt with this public-records issue and its meaning since 1967, when the Arkansas FOIA was enacted and codified at Ark. Code Ann. §§ 25-19-101 to -109 (Repl. 2002 & Supp. 2005). Our court, in the case of *City of Fayetteville v. Edmark*, 304 Ark. 79, 801 S.W.2d 275 (1990), emphasized the legislative intent of the FOIA as set out in Ark. Code Ann. § 25-19-102, which provides as follows:

> It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this chapter is adopted, making it possible for them or their representatives to learn and to report fully the activities of their public officials.

The *Edmark* court pointed out the case of *Laman v. McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968), the first case in which this court interpreted the FOIA. *Laman* held that there was no attorney-client privilege concerning FOIA information. The *La-*

---

[1] For example, both *State v. City of Clearwater*, 863 So. 2d 149 (Fla. 2003), and *Griffis v. Pinal County*, 156 P.3d 418 (Ariz. 2007), were concerned only with abstract questions of law regarding whether emails sent or received by public employees constituted public records simply because those emails were placed on a government-owned computer. In addition, the definitions of "public records" are different in Florida and Arizona. Florida defines the term as "all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency." *See* Fla. Stat. § 119.011 (2005). Notably, Florida's FOIA contains nothing similar to Arkansas's presumption that records maintained in public offices or by public employees are public records. Arizona's public-records law does not expressly define the term. *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 39-121 to 39-121.03 (2001 & Supp. 2006).

*man* decision has served as the forty-year-old benchmark when our courts are called upon to interpret the FOIA, particularly the Act's provisions concerning public records. Quoting from *Laman*, the *Edmark* court stated as follows:

> As a rule, statutes enacted for the public benefit are to be interpreted most favorably to the public. . . . We have no hesitation in asserting our conviction that the Freedom of Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved.

> *The language of the act is so clear, so positive, that there is hardly any need for interpretation.*

*Edmark*, 204 Ark. at 184-85, 801 S.W.2d at 278 (quoting *Laman*, 245 Ark. at 404-05, 432 S.W.2d at 755) (emphasis added).

In the present case, this court is again asked to interpret the application of Arkansas's FOIA provisions regarding "public records." *See* Ark. Code Ann. § 25-19-103(5)(A) and Ark. Code Ann. § 25-19-105. Section 25-19-103(5)(A) provides as follows:

> "Public records" means writings, recorded sounds, films, tapes, *electronic or computer-based information,* or data compilations in any medium *required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions* that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. *All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.*

(Emphasis added.)

As is evident by the plain language of the statute, all records maintained in public offices or by public employees within the scope of their employment *shall be presumed* to be public records. In the instant case, Quillin maintained and kept a county-owned computer in his county office, and he used that computer to exchange emails that were both business-related and personal.[2]

---

[2] The locus of a record is only important to determine whether the record falls under the presumption in Ark. Code Ann. § 25-19-103(5)(A) of the FOIA. *See Fox v. Perroni,* 358 Ark. 251, 188 S.W.3d 881 (2004).

The following facts were stipulated and found by the trial court: 1) Quillin represented the County in its dealings with GEMS; 2) Doe represented GEMS in its dealings with Pulaski County; 3) Quillin was charged with theft during the time he was engaged in business and personal relations with Doe; 4) Doe had sold software to Pulaski County; and 5) the emails at issue were all received by or sent from Quillin's business email address that was maintained in connection with his employment and official business for Pulaski County. These facts clearly reflect that Quillin was a county employee using a county computer. Further, under a liberal interpretation of the FOIA, these facts demonstrate that the records at issue fall with the definition of "public records." Because the personal and professional relationship between Quillin and Doe may have affected or influenced Quillin's performance and his expenditures of county funds, the communications between them constitute a record of the performance or lack of performance of official functions carried out by a public official or employee.

Under the plain language of the statute, Quillin's emails were *presumed* public records, because information is not exempt from the FOIA *unless* specifically exempted under the Act or some other statute. *See Furman v. Holloway*, 312 Ark. 378, 849 S.W.2d 520 (1993). Besides failing to rebut the trial court's findings of fact, the County and Doe offer no other statute or law which would allow Quillin's emails to be exempt from disclosure. They simply failed to present any evidence to meet their burden of overcoming the clear statutory presumption that the records at issue are public records.

Even if there was some ambiguity as to the scope of an alleged exemption, the trial court correctly favored the Democrat-Gazette with disclosure, as it was required to do by the FOIA. *See Young v. Rice*, 308 Ark. 593, 826 S.W.2d 252 (1992). In sum, I would hold that the trial court was not clearly erroneous in ordering the disclosure of the emails under the facts and law of this case.

Because the records at issue are plainly public records, and neither the County nor Doe has rebutted the statutory presumption compelling that result, remanding the matter for an in camera examination is unwarranted and a complete waste of time.[3] The majority's position unnecessarily prolongs the process and in-

---

[3] Pulaski County and Doe, for whatever reason, chose not to offer rebuttal evidence. Had they presented such evidence in the trial court, no further hearings would be necessary in this case.

creases the expenses of a FOIA request, and in so doing needlessly infringes upon a citizen's right to obtain public records. The Freedom of Information Act simply does not require an in camera inspection in these circumstances, and instructing the lower court to perform such a review thwarts the rights of Arkansas's citizens to access records that, simply stated, should be public.

IMBER and DANIELSON, JJ., join this dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. Although I agree with the majority's holding on the standing issue, my concurrence in the majority's opinion ends there. This case presents a matter of interpretation of the Arkansas Freedom of Information Act (FOIA), Ark. Code Ann. §§ 25-19-101 through 25-19-109 (Repl. 2002 & Supp. 2005). Contrary to our traditional rules of statutory construction, the majority declines to apply a plain reading of the FOIA and adopts secondary sources and case law from other jurisdictions to resolve the issue of whether the e-mails are a "public record."[1] Employing our rules of statutory construction and a liberal interpretation of the FOIA, I conclude that the e-mails at issue here are presumed to be "public records," and Pulaski County has not rebutted that presumption. Therefore, remand to the circuit court for an in camera review is not necessary. For the above stated reasons, I respectfully dissent.

We review issues of statutory construction de novo. *Fox v. Perroni*, 358 Ark. 251, 256, 188 S.W.3d 881, 885 (2004). We are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.* When reviewing issues of statutory interpretation, we keep in mind that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is

---

[1] The Arizona Supreme Court's decision in *Griffis v. Pinal County*, 152 P.3d 418 (Ariz. 2007), is inapposite. The term "public records" is not expressly defined by statute in Arizona; nor has this court ever applied a "substantial nexus" test in its interpretation of the FOIA. Thus, the remand directive in the majority opinion, "to determine if the e-mails 'constitute a record of performance of the official functions that are or should be carried out by a public official or employee,' " ignores the statutory definition of "public records" under the FOIA in favor of another jurisdiction's interpretation of a different statute.

open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Harris v. City of Fort Smith,* 366 Ark. 277, 234 S.W.3d 875 (2006).

At issue in this case is whether the e-mails that Pulaski County has refused to release to the Arkansas Democrat-Gazette fall within the scope of "public records" as defined in the FOIA. Arkansas Code Annotated § 25-19-103(5)(A), defines "public record" as:

> writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. *All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.*

Ark. Code Ann. § 25-19-103(5)(A) (emphasis added).

Restated, records are presumed to be public records when the records are maintained either (1) in public offices, or (2) by public employees within the scope of their employment. Dan Davis, a computer hardware analyst for Pulaski County, testified that, in accordance with the county's policy, he restored previously deleted e-mails from a county-owned computer used by Ron Quillin during his term of employment as the county's comptroller. Davis testified that he searched for and retrieved all e-mails that contained the text string "GEMS," meaning the county's software vendor and Jane Doe's employer. Thus, applying the plain language of § 25-19-103(5)(A), all of the retrieved e-mails were kept and maintained in the public offices of Pulaski County. Therefore, the presumption is that all of the retrieved e-mails are public records, and unless Pulaski County can meet its burden of overcoming this presumption, it must disclose all of the retrieved e-mails.

Pulaski County argues that the e-mails at issue are outside the scope of "public records" because the contents of the e-mails are personal, and, therefore, do not constitute a record of the

performance or lack of performance of official functions that were or should have been carried out by Quillin as a county employee. This would be true under a narrow interpretation of the statute, but that is not our law with respect to FOIA. "We liberally interpret the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner." *Fox v. Perroni*, 358 Ark. 251, 256, 188 S.W.3d 881, 885 (2004). "Furthermore, this court broadly construes the Act in favor of disclosure." *Id.* The record in this case shows that while Quillin and Jane Doe were representatives of parties on opposite sides of a purportedly arms-length contract between GEMS and Pulaski County, they were also paramours. Under a liberal interpretation of the FOIA definition of "public records," a written communication between a government employee and the representative of a government vendor would fall within the scope of "public records."

Pulaski County and Jane Doe, nonetheless, assert that they have stipulated to the fact that Quillin and Jane Doe were engaged in an extramarital affair, thereby making disclosure of the e-mails that are "of a highly personal and private nature" unnecessary to satisfy the FOIA's broad and laudable purpose that public business be performed in an open and public manner. As persuasive authority on this point, Pulaski County cites *State of Florida v. City of Clearwater*, 863 So. 2d 149 (Fla. 2003) and *Denver Publishing Co. v. Board of County Commissioner of County of Arapahoe*, 121 P.3d 190 (Colo. 2005). Both of these cases, however, involved the interpretation of state statutes with different definitions of the term "public records."

Here, as noted above, the e-mails at issue were exchanged between a county employee and a representative of a vendor with which the county had an ongoing contract. This circumstance is crucial because the impropriety of the personal relationship is bound up with the matter that gave rise to the Arkansas Democrat-Gazette's FOIA request in the first place, which is the Quillin's alleged misappropriation and misuse of county funds that has resulted in a criminal investigation. Accordingly, it is the context in which the e-mails were exchanged that compels the disclosure of the content of the e-mails. Where, as here, an alleged misuse of funds intersects with an extramarital affair, the timing and nature of the e-mail exchanges are material to the media's investigation into whether a county employee conducted county business in an open and public manner.

Pulaski County has offered to provide a list of the withheld e-mails along with the sender, recipient, and date and time of transmission. This would address the disclosure of timing, but it would not address the nature of the e-mails. For instance, the Arkansas Democrat-Gazette presented e-mails released by DHHS in which Quillin and Jane Doe conspired to arrange out-of-town travel that they could pass off as a business trip, when the trip was actually for a private liaison — facts that would not have been discoverable from the disclosure suggested by Pulaski County.

The majority concludes that an in camera review of the e-mails' content was necessary to support the circuit court's findings. While I agree that some of the circuit court's findings were erroneous, an in camera review is not necessary in this particular case. We review findings of fact under a clearly errone-ous standard. *Ligon v. Stewart*, 369 Ark. 380, 255 S.W.3d 435 (2007). A finding of fact is clearly erroneous when, on the entire evidence, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Id.*

The final judgment reflects the circuit court's finding (des-ignated No. 9) that because the personal relationship with Jane Doe may have affected Quillin's performance as a county em-ployee and may have influenced Quillin's expenditures of county funds, all aspects of the personal relationship between Quillin and Jane Doe are intertwined and enmeshed in the business relation-ship between Pulaski County and Jane Doe's employer. This finding is supported by the record. The evidence presented to the circuit court demonstrates that Quillin concurrently communi-cated with Jane Doe via e-mail both as the county's employee in a contractual relationship with Doe's employer and as Doe's par-amour. The timing and nature of the e-mails between both parties are paramount to an investigation of alleged misuse of public funds.

In a separate finding (designated No. 8), the circuit court stated that "It is impossible to discern whether some emails at issue were purely business emails while other emails were purely per-sonal in nature. Moreover, it is impossible to discern where the business correspondence stopped and the personal correspondence started with respect to the emails." I agree with the majority's conclusion that this finding is clearly erroneous because the finding could only be supported if the circuit court had viewed the contents of the e-mails and admitted the e-mails into the record. It is undisputed that the circuit court declined to conduct an in

camera review.[2] The circuit court's error on this point, however, is harmless because an in camera review is not necessary under the facts and circumstances of this case.

The majority suggests that the circuit court must conduct an in camera review in order to determine whether the e-mails constitute "public records." I disagree. Under the statutory presumption, the e-mails are public records. An in camera review would only be useful as evidence offered by the county to rebut the presumption. As explained above, the very context of the e-mails, Quillin and Jane Doe's relationship as business associates engaged in a romantic relationship, makes the content of the e-mails relevant to the issue — the performance or lack of performance of a government official.

Moreover, in support of its conclusion that an in camera review is necessary, the majority cites cases where the trial court had ruled in favor of the government's refusal to disclose the requested information. See Johninson v. Stodola, 316 Ark. 423, 872 S.W.2d 374 (1994); Gannett River States Pub. Co. v. Ark. Indus. Dev. Comm'n, 303 Ark. 684, 799 S.W.2d 543 (1990). In those cases, we stressed that, to further the purpose of FOIA, the trial court should perform an in camera review so as to ensure that the government agency has fulfilled its affirmative duty of proving that the records are truly exempt from disclosure.[3] Here, on the other hand, the circuit court has ruled in favor of the plaintiff, Arkansas Democrat-Gazette, and not the government, thereby promoting the FOIA's policy of liberal disclosure. I also conclude that Pulaski County's disclosure of the e-mails will not violate Jane Doe's constitutional right to privacy. In McCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909 (1989), McCambridge's son murdered his wife and child before committing suicide, and the Little Rock Police Department recovered several documents from the crime scene, including a letter to McCambridge from her son that contained

---

[2] Pulaski County failed to proffer the e-mails. Its failure to proffer this evidence precludes our review of whether prejudice resulted from the circuit court's failure to conduct an in camera inspection. See Duque v. Oshman's Sporting Goods-Services, Inc., 327 Ark. 224, 937 S.W.2d 179 (1997).

[3] As we stated in Gannett River States Publishing Co. v. Arkansas Industrial Development Commission, supra, "to hold otherwise makes the public's right to know hopelessly subservient to the unassailable impressions of the public agency involved. The person requesting information would be unable, for lack of information, to question the agency's decision." 303 Ark. at 690, 799 S.W.2d at 547.

sensitive information about their relationship. *Id.* McCambridge sued to prevent the police department from releasing the letter to the press under the FOIA on the basis that the disclosure would violate her constitutional right to privacy. *Id.* We agreed that disclosure of certain information under the FOIA could infringe upon an individual's interest in avoiding disclosure of personal matters under her constitutional right to privacy. *Id.* We recognized, however, that a personal matter can still be disclosed if the governmental interest in disclosure under the FOIA outweighs the individual's privacy interest. *Id.* We held that a personal matter is information:

> (1) that the individual wants to and has kept private or confidential,
> (2) that, except for the challenged government action, can be kept private or confidential, and (3) that to a reasonable person would be harmful or embarrassing if disclosed.

*Id.* at 230, 766 S.W.2d at 914. Although we held that the letter was a personal matter, because the letter contained information bearing upon the son's reasoning behind the suicide-murders and the public has a strong interest in announced solutions to crime, we concluded that the public's interest outweighed McCambridge's individual interest. *Id.*

Here, information in the e-mails between Jane Doe and Quillin do not constitute a personal matter because, unlike in *McCambridge*, even if the county does not disclose the e-mails at this time, the e-mails will not remain private and confidential. The e-mails have been used in the criminal investigation of Quillin and will also be used in a subsequent criminal prosecution. Moreover, the public has a strong interest in the resolution of crimes and the performance or lack of performance of government officials. Therefore, the public's interest in disclosure outweighs Jane Doe's privacy interest.

On these findings and a liberal construction of "public records" in favor of disclosure, I conclude that disclosure of the e-mails at issue and their content is required to satisfy the FOIA's purpose that public business be performed in an open and public manner. For these reasons, I would affirm the circuit court.

GLAZE and DANIELSON, JJ., join this dissent.