SLIP OPINION

Cite as 2016 Ark. 188

# SUPREME COURT OF ARKANSAS.
**No.** CV–15–828

| | |
|---|---|
| ARKANSAS STATE POLICE and BILL SADLER, in his official capacity as custodian of records for the ARKANSAS STATE POLICE<br><br>APPELLANTS | **Opinion Delivered** April 28, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [60CV-15-2303] |
| V. | HONORABLE MORGAN E. WELCH, JUDGE |
| DANIEL E. WREN<br>APPELLEE | <u>AFFIRMED</u>. |

**ROBIN F. WYNNE, Associate Justice**

The Arkansas State Police and Bill Sadler, in his official capacity as custodian of records for the Arkansas State Police (collectively, the ASP), appeal from a Pulaski County Circuit Court order granting appellee Daniel Wren relief on his complaint for unredacted access to certain accident reports under the Freedom of Information Act (FOIA). The ASP argues that the circuit court erred in holding that its policy of redacting personal information from accident reports is a violation of FOIA; the ASP contends that the redacted information is exempted from disclosure because its disclosure is prohibited by the federal Driver's Privacy Protection Act. We affirm.

The parties stipulated to several facts before the circuit court. Appellee, an attorney, requested to inspect accident reports obtained by Troop A of the ASP from May 1, 2015, through May 21, 2015. His reason for requesting the accident reports was to search for and solicit potential clients for his law practice. The parties agreed that the accident reports are public records as defined by FOIA and that pursuant to Arkansas Code Annotated section

27-53-202(b)(2)(B) (Supp. 2013)[1] the name and address of any minor should be redacted from the reports. At issue before the circuit court was whether the Driver's Privacy Protection Act (DPPA) applied to the personal information contained in the accident reports, as ASP contended.[2] ASP's policy, effective January 1, 2015, required redaction of personal identifying information unless one of the fourteen DPPA exceptions applies. Accident reports would no longer be available for in-bulk inspection, but specific reports could be purchased for $10 each. According to the ASP policy, all nonpersonal information contained within accident reports would be released to a requesting third party—for example, factual information as to where, when, or how a crash occurred or the type of vehicle involved.

---

[1] Arkansas Code Annotated § 27-53-202, Reporting requirements, provides in part:

(2)(A) Except as provided under subdivision (b)(2)(B) of this section, the accident report shall contain a full and complete list of the names and addresses of all passengers occupying the taxicab, bus, or other vehicle at the time of the accident.
(B) The name and address of a minor occupant who is under eighteen (18) years of age shall be included in the report, but the name and address of the minor occupant shall:
(i) Not be open to public inspection under this subchapter or the Freedom of Information Act of 1967, § 25-19-101 et seq., unless the requestor is:
(a) The parent, legal guardian, or legal custodian of the minor occupant; or
(b) A representative of an insurance company that insures a person involved in the accident; and
(ii) Be redacted on copies including without limitation written, photostatic, or electronic copies, produced under this subchapter or the Freedom of Information Act of 1967, § 25-19-101 et seq., unless the requestor is identified in subdivision (b)(2)(B)(i) of this section.

[2] Ark. Code Ann. § 25-19-105(a)(1)(A), provides: "Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records."

The court held a hearing on June 5, 2015, at which appellee and Gregory Downs, general counsel for the ASP, testified. Downs testified that at the scene of an accident, a state trooper typically uses the Office of Motor Vehicles' database to "auto-populate" the information in an accident report, although the information can also be physically entered into the computer. He testified that "ninety-nine percent of the time" information is gained from swiping the magnetic strip on the back of a driver's license. He also testified that a person involved in an accident can get an unredacted copy of the report, including the other driver and any passenger's personal information, without the other parties' consent. There is no exception for the media. Yet, attached to appellee's posthearing brief were five newspaper articles regarding fatal crashes in which the ASP reported the names and hometowns of those involved in fatal vehicle crashes in June 2015. In its amended order of July 8, 2015, the circuit court ruled in favor of the appellee and enjoined the policy of the ASP regarding redactions of accident reports. This appeal followed.

The sole issue on appeal is whether the DPPA prohibits disclosure of personal information in accident reports, which are public records within the meaning of FOIA. We review issues of statutory construction de novo. *Pulaski Cty. v. Ark. Democrat-Gazette, Inc.*, 370 Ark. 435, 439, 260 S.W.3d 718, 720 (2007). This court liberally interprets FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *Nabholz Constr. Corp. v. Contractors for Pub. Prot. Ass'n*, 371 Ark. 411, 416, 266 S.W.3d 689, 692 (2007). Furthermore, we broadly construe FOIA in favor of disclosure. *Id.*

In 1994, Congress passed the DPPA, 18 U.S.C. §§ 2721-2725, which regulates the disclosure of personal information contained in the records of state motor-vehicle departments. The legislation was introduced in response to growing concern over crimes committed by individuals who used Department of Motor Vehicle (DMV) records to identify and locate their victims.[3] *Parus v. Kroeplin*, 402 F. Supp. 2d 999, 1005–06 (W.D. Wis. 2005). In addition, Congress found that many states were selling personal information collected by DMVs to individuals and businesses. *See, e.g.*, 139 Cong. Rec. 29466, 29468, 29469 (1993); 140 Cong. Rec. 7929 (1994) (remarks of Rep. Goss). As explained by the United States Supreme Court:

> The DPPA establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent. The DPPA generally prohibits any state DMV, or officer, employee, or contractor thereof, from "knowingly disclos[ing] or otherwise mak[ing] available to any person or entity personal information about any individual obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721(a). The DPPA defines "personal information" as any information "that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information," but not including "information on vehicular accidents, driving violations, and driver's status." § 2725(3). A "motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." § 2725(1).

*Reno v. Condon*, 528 U.S. 141, 144 (2000). The DPPA establishes criminal fines and a private cause of action for its violation. 18 U.S.C. §§ 2723, 2724. Despite its general prohibition, the DPPA lists fourteen permitted uses of personal information obtained from

---

[3] The DPPA was a part of the Violent Crime Control and Law Enforcement Act of 1994.

motor-vehicle records. *Id.* § 2721(b). These exceptions include use by any government agency in carrying out its functions; use by any insurer or self-insured entity in connection with claims-investigation activities, antifraud activities, rating, or underwriting; and use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains. *Id.* In *Maracich v. Spears*, 133 S. Ct. 2191 (2013), the United States Supreme Court held that a law firm's obtaining personal information from the state department of motor vehicles and sending communications for the predominant purpose of solicitation is not a use of personal information exempt from DPPA liability under subsection (b)(4)'s "litigation exception." Generally speaking, redisclosure or resale by an authorized recipient of personal information under section 2721(b) is permitted only for a use permitted under subsection (b). *Id.* § 2721(c).

This appeal presents an issue of first impression in Arkansas. The ASP relies primarily on the following cases from other jurisdictions. In *Camara v. Metro-N. R.R. Co.*, 596 F. Supp. 2d 517 (D. Conn. 2009), plaintiffs were employees who asserted that Metro-North had violated the DPPA by improperly obtaining and using their personal information from motor-vehicle records maintained by various state departments of motor vehicles. The court granted summary judgment to the defendant because the information obtained— plaintiffs' driving histories—was not protected personal information under the statute. That case is not at all similar to the facts of the present case. The case most helpful to the ASP's position, *Pavone v. Law Offices of Anthony Mancini, Ltd.*, 118 F. Supp. 3d 1004 (N.D. Ill. 2015), was entered after the circuit court had made its decision in the present case. In *Pavone*, the federal district court denied a law firm's motion to dismiss a class action under

the DPPA alleging that the firm obtained Illinois traffic crash reports and used the information in those reports to send targeted solicitations to persons involved in car accidents. The court held that personal information contained in crash reports did not fall within the scope of DPPA's exception for information on vehicular accidents and that the DPPA protected personal information contained in crash reports. Of course, *Pavone* is not controlling precedent for this court. In addition, the ASP cites *Whitaker v. Appriss, Inc.*, 2014 WL 4536559 (N.D. Ind. Sept. 11, 2014), in which the federal district court denied a motion to dismiss a DPPA complaint, finding that "it's plausible that the personal information in the [police department motor vehicle] accident reports was obtained from the state department of motor vehicles, and thus Ms. Whitaker and Mr. Dunkin might have a claim under the DPPA." *Whitaker*, 2014 WL 4536559, at *5.

In contrast, in *Mattivi v. Russell*, 2002 WL 31949898 (D. Colo. Aug. 2, 2002), the federal district court granted the defendants' (a newspaper publisher and editor) motion for summary judgment filed by Mattivi under the DPPA after the newspaper obtained and published an accident report of his single-car vehicle collision, for which he was charged with DUI. The court concluded that the accident report generated by the Colorado State Patrol and provided to defendants by that agency is not a "motor vehicle record" under the DPPA, and defendants' publication of the report in the newspaper did not violate the DPPA. The court also concluded that the plain language of exception in section 2725(e) makes clear that Congress did not intend "information on vehicular accidents" to be included within the Act's prohibition of disclosure of "personal information." We find the *Mattivi* court's reasoning persuasive.

Keeping in mind the intent of Congress in passing the DPPA, it is clear that a vehicle-accident report is not included in the definition of "motor vehicle record," regardless of whether, as a matter of convenience, some of the information included in an accident report may be taken from or verified by a database maintained by the Office of Motor Vehicles. Furthermore, Congress specifically provided that "personal information" does not include information on vehicular accidents. Because the DPPA does not prohibit information contained in accident reports from being released under FOIA, we affirm the ruling of the circuit court.

Affirmed.

BAKER and GOODSON, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** Because the majority has failed to adhere to our well-established rules of statutory interpretation, I must dissent.

As the majority correctly states, "The sole issue on appeal is whether the DPPA prohibits disclosure of personal information on accident reports, which are public records within the meaning of FOIA." Based on the applicable statutes, the unequivocal answer is yes. However, in cursory fashion, the majority detours from the applicable statutes and our rules of statutory interpretation to erroneously hold that the personal information contained in accident reports is not subject the protections of the DPPA.

Although there are several other statutes that have an impact on the issue before this court, the issue presented involves two statutes—one state and one federal requiring interpretation of Ark. Code Ann. § 25-53-209 and 18 U.S.C. § 2721–2725. First, FOIA, Ark. Code Ann. § 25-19-105, "Examination and copying of public records," provides in pertinent part:

> Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.

With regard to motor-vehicle-accident reports, Ark. Code Ann. § 27-53-209 provides in its entirety:

> Except as provided under § 27-53-202(b)(2)(B), all motor vehicle accident reports made by the Department of Arkansas State Police and its records of traffic violations shall be open to public inspection at all reasonable times.

In other words, FOIA allows for inspection and copying of all public records unless the disclosure is prohibited by laws specifically enacted to provide otherwise. Further, except as provided under § 27-53-202(b)(2)(B), all motor-vehicle-accident reports are open to public

inspection.

Next, Ark. Code Ann. § 27-53-202 provides in pertinent part:

(2)(A) Except as provided under subdivision (b)(2)(B) of this section, the accident report shall contain a full and complete list of the names and addresses of all passengers occupying the taxicab, bus, or other vehicle at the time of the accident.

(B) The name and address of a minor occupant who is under eighteen (18) years of age shall be included in the report, but the name and address of the minor occupant shall:

(i) Not be open to public inspection under this subchapter or the Freedom of Information Act of 1967, § 25-19-101 et seq., unless the requestor is:

(a) The parent, legal guardian, or legal custodian of the minor occupant; or (b) A representative of an insurance company that insures a person involved in the accident; and
(ii) Be redacted on copies including without limitation written, photostatic, or electronic copies, produced under this subchapter or the Freedom of Information Act of 1967, § 25-19-101 et seq., unless the requestor is identified in subdivision (b)(2)(B)(i) of this section.

Based on the plain language of the Arkansas statutes, it is evident that, with the exception of information regarding minors,[1] vehicle-accident reports are subject to FOIA.

Next, a review of the Driver's Privacy Protection Act of 1994 is necessary to determine whether the DPPA prohibits release of the information contained in the Arkansas motor vehicle-accident reports. In *Maracich v. Spears*, 133 S. Ct. 2191, 2195 (2013), the United States Supreme Court recognized the purpose of the DPPA:

Concerned that personal information collected by States in the licensing of motor vehicle drivers was being released– even sold– with resulting loss of privacy for many persons, Congress provided federal statutory protection. It enacted the Drivers Privacy Protection Act of 1994, referred to here as the DPPA. See 18 U.S.C. §§ 2721–

---

[1]The parties agree that information regarding minors would be redacted and Wren does not seek information regarding minors.

2725. The DPPA regulates the disclosure of personal information contained in the records of state motor vehicle departments (DMVs). Disclosure of personal information is prohibited unless for a purpose permitted by an exception listed in 1 of 14 statutory subsections. *See* §§ 2721(b)(1)-(14).

Two separate statutes within the DPPA are at issue. 18 U.S.C. § 2721, entitled "Prohibition on release and use of certain personal information from State motor vehicle records," provides in pertinent part:

(a) In general.--A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:

(1) personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section; or

(2) highly restricted personal information, as defined in 18 U.S.C. 2725(4), about any individual obtained by the department in connection with a motor vehicle record, without the express consent of the person to whom such information applies, except uses permitted in subsections (b)(1), (b)(4), (b)(6), and (b)(9): Provided, That subsection (a)(2) shall not in any way affect the use of organ donation information on an individual's driver's license or affect the administration of organ donation initiatives in the States.

(b) Permissible uses.--*Personal information referred to in subsection (a) shall be disclosed for use in connection with matters of motor vehicle or driver safety* and theft, motor vehicle emissions, motor vehicle product alterations, recalls, or advisories, performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters 301, 305, and 321–331 of title 49, and, subject to subsection (a)(2), may be disclosed as follows:

(1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

(2) *For use in connection with matters of motor vehicle or driver safety and theft*; motor

3

vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.

. . . .

(c) Resale or redisclosure.--*An authorized recipient of personal information* (except a recipient under subsection (b)(11) or (12)) *may resell or redisclose the information only for a use permitted under subsection* (b) (but not for uses under subsection (b) (11) or (12)). An authorized recipient under subsection (b)(11) may resell or redisclose personal information for any purpose. An authorized recipient under subsection (b)(12) may resell or redisclose personal information pursuant to subsection (b)(12). Any authorized recipient (except a recipient under subsection (b) (11)) that resells or rediscloses personal information covered by this chapter must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicle department upon request.

(Emphasis added.)

Second, 18 U.S.C. § 2725, "Definitions," provides in pertinent part:

In this chapter–

(1) "motor vehicle record" means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles;
. . . .

(3) "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, *but does not include information on vehicular accidents*, driving violations, and driver's status.

(4) "highly restricted personal information" means an individual's photograph or image, social security number, medical or disability information[.]

(Emphasis added.)

Having identified the relevant statutes, the term "personal information" and its definition as codified in 18 U.S.C. § 2725(3) is key to my analysis. The DPPA only protects "personal information" from disclosure. However, the majority focuses on the document as a whole as opposed to the specific information in the report. The question is whether there is personal information at issue. The DPPA does not protect entire documents, but rather personal information. Thus, the document must be analyzed to determine whether the content includes protected information.

The DPPA defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, *but does not include information on vehicular accidents*, driving violations, and driver's status." (Emphasis added.) The parties agree that accident reports contain the names, addresses, telephone numbers and driver identification numbers of persons in the accident. The parties disagree as to the meaning of the phrase "does not include information on vehicular accidents" in the definition, and the interpretation of this phrase is critical to whether the DPPA applies to this matter. ASP asserts that the phrase means that only information regarding the actual accident is excluded from DPPA protection. Wren contends that the phrase is a blanket exception and that the entire accident report is excepted from the DPPA.

Although not cited by the majority, Ark. Code Ann. § 27-53-206 is significant to the analysis in this matter. Ark. Code Ann. § 27-53-206 addresses reporting of accidents and the

approved forms and information to be included in accident reports:

> (a)(1) The Department of Arkansas State Police shall prepare and upon request supply to police departments, coroners, sheriffs, and other suitable agencies or individuals forms for accident reports required under this subchapter.
>
>> (2)(A) The reports shall call for sufficiently detailed information to disclose with reference to a traffic accident the cause, conditions then existing, and the persons and vehicles involved.
>>
>> (B) Every accident report shall include provisions which inquire about whether or not the accident was caused as a result of the driver's lapse of consciousness, epileptic condition, or similar nervous disorder, or an episode of marked mental confusion or as a result of any physical disability, disease, or disorder or any other medical condition of the driver.

Based on the plain language of Ark. Code Ann. § 27-53-206, accident reports in Arkansas include detailed information as to the cause, conditions then existing, the persons and vehicles involved, information about whether the accident was caused as a result of the driver's lapse of consciousness, physical disability, disease, or disorder or any other medical condition of the driver. Further, Ark. Code Ann. § 27-53-206 requires the report to indicate the "persons and vehicles involved"; it does *not* require that the report detail additional personal information such as the address, phone number, or driver's license number of the persons involved. The accident report requires only information that is relevant to the accident.

Accordingly, based on the plain language of the DPPA, to the extent that an accident report contains information beyond information related to the accident, I would hold that that the information is not information "on [a] vehicular accident" and constitutes protected personal information under the DPPA. Therefore, the phrase "information on vehicular

accidents" as used in the DPPA means information regarding the specifics of the actual accident; the cause, conditions, persons, and vehicles. Further, in support of this reading is *Pavone v. Meyerkord & Meyerkord,* LLC, 118 F. Supp. 3d 1046, 1050 (N.D. Ill. 2015). In *Pavone*, the Federal District Court for the Northern District of Illinois addressed the issue of the DPPA's definition of "personal information" and the exclusion of "information on vehicular accidents." The court addressed a claim under 18 U.S.C. § 2722—which is not the same as here,[2] and as the majority notes is from a motion to dismiss—but the definition of "personal information" is the same. There, the court explained the distinction between the information in accident reports, personal information, and information on the accident:

> Defendant asserts that the Illinois Traffic Crash Report, upon which the Pavones' claims rely, constitutes information on a vehicular accident and therefore the DPPA does not protect it. (See R.15, at 4.) Defendant's characterization of the Report fails, however, as it attempts to broadly classify the Report as a whole rather than recognize the different types of information contained within the Report. Indeed, the DPPA protects types of "information," not types of reports. *See e.g., Maracich, 133 S.Ct. at 2198; Pavone, et al. v. Law Offices of Anthony Mancini, Ltd.*, 118 F.Supp.3d 1004, 1005–06, No. 15 C 1538, 2015 WL 4554844, at *1 (N.D.Ill. July 28, 2015) ("[b]ased on the plain language of the statute, the exclusion refers to information about the accident, not the personal information that is included in accident reports"). The Pavones allege that Defendant's violation of the DPPA stemmed from obtaining and using their names and address – not obtaining the information related to the accident (e.g., vehicles involved, road conditions, times of day, etc). While Defendant is correct that "personal information," as defined by the DPPA, "does not include information on vehicular accidents," this argument is not dispositive of the Pavones' claim. The Report at issue includes information that meets the DPPA's definition of "personal

---

[2] 18 U.S.C.A. § 2722(a) addresses non-government parties and persons – "Procurement for unlawful purpose."--It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

information,"e.g., names, addresses, in addition to the car accident information that does not meet the definition. Indeed, Defendant described the Report as providing details that meet both classifications of information – personal information and information on vehicular accidents. (See R.15, at 4 (referring to the Report as detailing – among other things: the date and time of the accident, the make, model, and year of each vehicle involved in the accident; the name, address, date of birth, and sex of each driver and passenger involved in the accident; and a short narrative stating that two cars were involved in a rear-end collision and each driver's statement regarding the cause of the collision") (emphasis added)).

Accordingly, the information relevant to the accident is excepted from the DPPA, and does not have protection from the DPPA. However, information beyond that relevant to personal information is not excepted from the DPPA, and the DPPA protects that information from disclosure.

Thus, the DPPA prohibits the release of the remaining information in the accident reports, including name, address, telephone number, and personal identifying information on Arkansas motor-vehicle-accident reports by the ASP as obtained from the OMV. The source of the personal information at issue is critical to the issue before the court. As the United States District Court for the Northern District of Indiana explained, the source of the information is pivotal to reviewing a claim involving the DPPA:

> The Supreme Court analyzed whether an attorney's solicitation of clients for a lawsuit fell within the scope of the DPPA exception that allows a party to obtain personal information for use in anticipation of litigation in *Maracich v. Spears*, 133 S.Ct. 2191, (2013). The attorney obtained personal information from the state department of motor vehicles, then sent solicitation letters to the individuals asking them to join lawsuits against car dealerships. 133 S.Ct. at 2196– 2197. The Court held that sending communications for the predominant purpose of solicitation isn't a permitted use of personal information under the Act. 133 S.Ct. at 2210. Yet again, the source of the personal information was the state department of motor vehicles. The method or medium of the disclosure is important as it relates to the *original source* of the information. The source of the personal information in the accident reports must be examined to decide whether the DPPA protects the information.

*Whitaker v. Appriss, Inc.*, No. 3:13–CV–826–RLM–CAN, 2014 WL 4536559, at ⋆4 (N.D. Ind. Sept. 11, 2014); *see also Pavone*, 118 F. Supp. 3d at 1055.

Here, Downs testified that 99% of the accident reports are generated by officers with information that is from the OMV database. Downs testified that the officers use the driver's licenses to access the data base and the accident forms are autopopulated. Based on Downs's testimony, it is clear the information comes from the OMV.

In this case, while the majority cites to cases from other jurisdictions to support its interpretation, none of those cases involve the situation presented here. The issue here is not whether a motor-vehicle report is synonymous with an accident report. The issue is a government agency's disclosure or redisclosure of personal information pursuant to the DPPA and whether the personal information contained in Arkansas vehicular–accident reports is prohibited from release by the DPPA.

In reviewing the statutes, I find the language of the DPPA in the statutes relevant to this case to be clear and unambiguous. Furthermore, the provisions can be read in a consistent, harmonious, and sensible manner, giving effect to every part. The plain language of the relevant statutes, 18 U.S.C. § 2721 (a)–(c) begins with subsection (a) with a general prohibition on the release of information by a state OMV. Subsection (b) then defines exceptions to this prohibition, including providing that "personal information referred to in subsection (a) shall be disclosed for use in connection with matters of motor vehicle or driver safety." Further, if an exception in subsection (b) permits disclosure by a state OMV to a specific second party, then subsection (c) regulates the separate release that occurs when the

recipient of a record from the OMV is responsible for a secondary disclosure to a third party. Specifically, subsection (c) allows for authorized recipients to redisclose the information only for a use permitted under subsection (b). In sum, both subsections (a) and (c) regulate types of disclosure and direct the details of that disclosure to subsection (b). Here, the OMV released the information to the ASP for use in connection with matters of motor vehicle or driver safety.

Finally, I must note that the majority borrows from the interpretation of the federal district court of Colorado's unpublished opinion in *Mattivi v. Russell*, No. CIV. A. 01-WM-533 (BNB, 2002 WL 31949898, at ★3 (D. Colo. Aug. 2, 2002). However, the majority's finding that "the district court's reasoning [is] persuasive" is misplaced. *Mattivi* is not on point because it stemmed from an action against a third party, not the government agency, as is presented in this case. *Mattivi* involved the disclosure of personal information by a third party, and not the police department itself because Mattivi did not challenge the police department's release of the accident report to the newspaper. Accordingly, section 2721—at issue here, and governing disclosures originating with OMV records—was not at play in *Mattivi*. Rather, the relevant section of the DPPA was section 2722, which prohibits disclosure from nonstate persons. 18 U.S.C. § 2722(a) provides that "[i]t shall be unlawful for any person to knowingly obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." Therefore, the district court addressed only the issue of whether the traffic report itself was a "motor vehicle record," which again, is not the issue here. The critical issue in this case is the source of the

information and the origination of the report, not whether the traffic report itself is a motor–vehicle record.  Here, if the ASP acquired the information from the OMV, then they are considered an "authorized recipient" of the information under subsection (c) and are expressly prohibited from redisclosing the information except as provided by statute.    Accordingly, for the reasons discussed above, I dissent from the majority opinion and would reverse and remand the matter to the circuit court.

GOODSON, J., joins in this dissent.

*Leslie Rutledge*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Sr. Ass't Att'y Gen., and *Delena C. Hurst*, Ass't Att'y Gen., for appellant.

*M. Keith Wren*, for appellee.